## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 12 2020, 8:14 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Alice B. Blevins
Bartanen Law Office, LLC
Salem, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tina L. Mann
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

James McMahan,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

August 12, 2020

Court of Appeals Case No.
19A-CR-2917

Appeal from the Washington
Circuit Court

The Honorable Larry W. Medlock,
Judge

Trial Court Cause No.
88C01-1705-F5-364

**Bradford, Chief Judge.**

# Case Summary

[1] James McMahan pled guilty but mentally ill to Level 5 felony stalking. In exchange for his guilty plea, the State agreed to dismiss four other charges. The trial court accepted McMahan's guilty plea and sentenced him to a term of six years with one year suspended to probation. On appeal, McMahan contends that the trial court abused its discretion in sentencing him. We affirm.

# Facts and Procedural History

[2] On March 14, 2017, a protective order was issued that prohibited McMahan from having any contact with C.M., his ex-wife, and C.M.'s children. On March 24 and 25, 2017, McMahan sent several messages to C.M. via Facebook messenger in violation of the protective order. McMahan was charged with invasion of privacy for these acts under cause number 88C01-1703-CM-222. McMahan also violated the protective order on May 2 and 3, 2017, by calling C.M. on her phone several times. He was charged with invasion of privacy for these acts under cause number 88C01-1705-CM-312.

[3] McMahan continued to text and call C.M., using aggressive and threatening language. The phone calls and texts made C.M. feel threatened and intimidated. On May 30, 2017, as a result of his constant contact with C.M., McMahan was charged with one count of Level 5 felony stalking.

[4] While in jail, McMahan underwent a court-ordered psychiatric evaluation and was deemed incompetent to stand trial. He was subsequently committed to a

Department of Mental Health facility for treatment. On November 16, 2018, the trial court was notified that McMahan had regained competency to stand trial.

[5] After regaining competency, McMahan pled guilty but mentally ill to the Level 5 felony stalking charge. In exchange for his guilty plea, the State agreed to dismiss the invasion of privacy charges and two other unrelated charges. The trial court accepted McMahan's guilty plea and sentenced him to a term of six years, with one year suspended to probation.

# Discussion and Decision

[6] McMahan contends that the trial court abused its discretion in sentencing him.[1] Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *modified on other grounds on reh'g*, 875 N.E.2d 218 (Ind. 2007). "An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the

---

[1] Despite including an appropriateness challenge in his statement of the issues presented for appeal, McMahan does not develop the appropriateness claim. In fact, he has failed to provide any argument or citation to the record or relevant authority in support thereof. McMahan's failure to present a cogent argument relating to his appropriateness claim results in waiver of the claim on appeal. *See Martin v. Hunt*, 130 N.E.3d 135, 137 (Ind. Ct. App. 2019) ("Failure to present a cogent argument results in waiver of the issue on appeal."); Ind. Appellate Rule 8(A)(8)(a) ("The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record of Appeal relied on.").

reasonable, probable, and actual deductions to be drawn therefrom." *Id.* (quotation omitted).

> We review for an abuse of discretion the court's finding of aggravators and mitigators to justify a sentence, but we cannot review the relative weight assigned to those factors. *Anglemyer*, 868 N.E.2d at 490–91. When reviewing the aggravating and mitigating circumstances identified by the trial court in its sentencing statement, we will remand only if "the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by the record, and advanced for consideration, or the reasons given are improper as a matter of law." *Id.*

*Baumholser v. State*, 62 N.E.3d 411, 416 (Ind. Ct. App. 2016). A single aggravating circumstance may be sufficient to enhance a sentence. *Id.* at 417.

[7] In sentencing McMahan, the trial court found McMahan's prior criminal history, his history of substance abuse, and the fact that he had violated a protective order when committing the underlying offense to be aggravating factors. McMahan does not challenge any of these aggravating factors. He merely claims that the trial court abused its discretion by failing to find his poor mental health to be a mitigating factor.

## A. McMahan's Mental Health

[8] Although a sentencing court must consider all evidence of mitigating factors offered by a defendant, the finding of mitigating factors rests within the court's discretion. *Henderson v. State*, 769 N.E.2d 172, 179 (Ind. 2002). A trial court is neither required to find the presence of mitigating factors, *Fugate v. State*, 608

N.E.2d 1370, 1374 (Ind. 1993), nor obligated to explain why it did not find a factor to be significantly mitigating. *Sherwood v. State*, 749 N.E.2d 36, 38 (Ind. 2001). "A court does not err in failing to find mitigation when a mitigation claim is highly disputable in nature, weight, or significance." *Henderson*, 769 N.E.2d at 179 (internal quotations omitted).

[9] While Indiana law "mandates that the trial judge not ignore facts in the record that would mitigate an offense, and a failure to find mitigating circumstances that are clearly supported by the record may imply that the trial court failed to properly consider them," *Sherwood*, 749 N.E.2d at 38, an allegation that the trial court failed to find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Carter v. State*, 711 N.E.2d 835, 838 (Ind. 1999). Furthermore, "the trial court is not required to weigh or credit the mitigating evidence the way appellant suggests it should be credited or weighed." *Fugate*, 608 N.E.2d at 1374.

[10] McMahan asserts that the trial court abused its discretion by failing to find his poor mental health to be a significant mitigating factor. "[W]henever a defendant is found guilty but mentally ill at the time of the crime or enters a plea to that effect that is accepted by the court, the court shall sentence the defendant in the same manner as a defendant found guilty of the offense." Ind. Code § 35-36-2-5(a). Thus, a defendant who has pled guilty but mentally ill "'is not automatically entitled to any particular credit or deduction from his otherwise aggravated sentence' simply by virtue of being mentally ill." *Weeks v.*

*State*, 697 N.E.2d 28, 30 (Ind. 1998) (quoting *Archer v. State*, 689 N.E.2d 678, 684 (Ind. 1997).

[11]     Nonetheless, in sentencing a defendant who has pled guilty but mentally ill, a trial court "should at a minimum carefully consider on the record what mitigating weight, if any, to accord to any evidence of mental illness, even though there is no obligation to give the evidence the same weight the defendant does." *Id.* The Indiana Supreme Court has outlined several considerations that bear on the weight, if any, that should be given to mental illness in sentencing. *Id.* "These factors include: (1) the extent of the defendant's inability to control his or her behavior due to the disorder or impairment; (2) overall limitations on functioning; (3) the duration of the mental illness; and (4) the extent of any nexus between the disorder or impairment and the commission of the crime." *Id.* (citing *Archer*, 689 N.E.2d at 685).

[12]     The record reveals that the trial court considered evidence relating to each of the factors set forth in *Archer* and *Weeks*. In determining that McMahan was competent to stand trial on the underlying stalking charge, Dr. Stephanie Callaway opined that

> Mr. McMahan had the ability to appreciate the wrongfulness of his actions during both Invasion of Privacy cases and his Stalking case. He expressed awareness that there was a protective order in place and he was not legally allowed to contact his ex-wife, but he cited reasons for doing so, including her contacting him and his ongoing concern for their children. However, he knew

contacting her was illegal, which indicates he had the ability to appreciate that his actions were wrong. His psychiatric symptoms might have affected his behavior, but did not limit his ability to appreciate the wrongfulness.

Appellant's App. Vol. II p. 76. In a second competency evaluation, McMahan reported to Dr. Daniel Hackman that he had "no history of mental illness prior to undergoing divorce proceedings." Appellant's App. Vol. II p. 55. Neither Dr. Callaway nor Dr. Hackman opined that McMahan's ability to function was limited by mental illness at the time he committed the act of stalking or that a strong nexus existed between McMahan's mental illness and the commission of the offense.

[13] In addition, there was nothing in McMahan's background to suggest that he had ever been unable to control his behavior due to a mental impairment. McMahan reported that his grades had been "pretty good" before he dropped out of high school after completing the eleventh grade to attend trade school. Appellant's App. Vol. II p. 54. He was never enrolled in special education and had never been expelled. McMahan managed to maintain consistent employment, working his entire adult life as a certified pipe welder. McMahan indicated that he had worked in river transportation, which enabled him to travel "a lot for his job across the country." Appellant's App. Vol. II p. 55. McMahan has never received disability income.

[14] Further, at sentencing, the trial court heard evidence relating to McMahan's history of mental illness and how it related to ability to control his behavior and

function in society. When asked if McMahan had a history of mental illness his brother responded that

> back in the day when he was young, he had a little problem but it was fixed and over with and ah, as far as I, you know everything was good. He ended up with a great job making good money and ended up with a son ah, everything seemed fine for a long time.

Tr. Vol. II p. 6. McMahan's brother further explained that the "little problem" occurred when he was in high school, testifying that McMahan "smoked weed and drank a little and [was] just young and kind of wild I guess." Tr. Vol. II p. 7. In addition, Dr. Myriam McCray testified that during an examination, she found McMahan to be friendly and polite and that he seemed to "put forth his best effort." Tr. Vol. II p. 13. McMahan "was able to recognize his responsibility and what happened" and expressed "regrets," noting things "that he wishes he had done differently." Tr. Vol. II p. 14.

[15] The evidence relating to the factors set forth in *Archer* and *Weeks* does not demonstrate that McMahan's poor mental health warranted significant mitigating weight. Further, the record clearly establishes that the trial court did not ignore McMahan's mental health in sentencing him. The trial court specifically discussed McMahan's mental health, stating:

> I seriously considered as a mitigating factor, mental health issues. But it wasn't recommended by the probation department and listening to the testimony of his brother, he didn't seem to think there's been a history of mental health issues and that he was fixed. I'm not totally convinced of that, but I suspect he's in a

better position to determine whether he's had a history of mental health issues or not and since he didn't seem to think that's a factor, I'm not going to consider it as a mitigating factor.

Tr. Vol. II p. 40. The trial court acted within its discretion in determining that McMahan's mental health did not warrant significant mitigating weight.

[16] The judgment of the trial court is affirmed.

Najam, J., and Mathias, J., concur.